No. 89-242

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

     Plaintiff and Respondent,

  -vs-

TOMMY G. JOHNSTONE,
a/k/a TOM JOHNSTONE,

     Defendant and Appellant.

**FILED**

SEP 13 1990

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixth Judicial District,
In and for the County of Sweet Grass,
The Honorable Byron Robb, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Todd R. Hillier, Esq.; R. Mark Josephson, Esq.; Big
Timber, Montana

     For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana
Jennifer M. Anders, Asst. Attorney General, Helena,
Montana
James Tulley, Deputy County Attorney; Thomas Biglen,
County Attorney, Big Timber, Montana


Submitted on Briefs:   June 14, 1990

Decided:   September 13, 1990

Filed:

_____
Clerk

south on Highway 298 toward the McLeod fishing access the same afternoon. The driver of the pickup looked familiar to Undersheriff Ames. After stopping at the sheriff's department in Big Timber, Ames went off duty. At his home, Ames later received a call from the sheriff's department dispatcher describing the circumstances surrounding the damage to Carl Leader's vehicle. At this time, Ames recalled the identity of the pickup driver and had reason to believe the driver may have been responsible for the damage to Leader's vehicle. Ames arranged for lookouts on various routes leading from the McLeod area while he and a deputy drove up the Boulder River drainage several miles past the fishing access.

Ames's son Dan, a Stillwater County Sheriff's Deputy, then advised his father he was following a turquoise-colored pickup with 23-county license plates occupied by one male. Ames requested that his son make a felony stop. The driver of the turquoise pickup, the defendant, stopped approximately two miles east of Columbus, roughly 65 miles from the fishing access. Deputy Ames arrested the defendant, had him transported to Columbus and arranged for his pickup to be towed into town.

Carl Leader identified defendant's vehicle as the one he had seen at the fishing access prior to discovering his window broken. Leader did not at that time identify defendant as the occupant of that vehicle. During an inventory of defendant's personal possessions as part of the booking process, Stillwater County Deputy Albert Hust removed a quantity of glass particles from defendant's shirt and pant pockets. Hust put the glass recovered

3

into separate evidence bags. Defendant gave Undersheriff Ames permission to search his vehicle. Ames found leather gloves imbedded with glass and a pry bar with pieces of glass on it.

Defendant was charged by information with attempted theft, a felony, in violation of § 45-6-301, MCA, and criminal trespass to vehicles, a misdemeanor, in violation of § 45-6-202, MCA. Counsel was appointed for defendant and he pled not guilty to both charges. The State gave notice to defendant of its intention to offer evidence of other crimes as follows:

1. Evidence of a theft by the defendant of a tool box and tools from a motor vehicle belonging to Marvin Maxwell while the vehicle was parked at a Fishing Access site in Sweet Grass County, Montana, on August 23, 1986, including proof of defendant's conviction of felony theft in such matter. Such evidence will be offered to establish motive, intent, plan and/or absence of mistake or accident with respect to defendant's conduct at issue in these proceedings.

2. Evidence of a theft by the defendant of a purse and cash from a motor vehicle belonging to Cora Nelson while it was parked at Carter's Bridge, Park County, Montana, on August 7, 1986, including proof of defendant's conviction of felony theft in such matter. Such evidence will be offered to establish motive, intent, plan and/or absence of mistake or accident with respect to defendant's conduct at issue in these proceedings.

3. Evidence of a theft by defendant of binoculars, camera equipment and cash from a motor vehicle belonging to John Hewitt and JoAnne Rathburn while the vehicle was parked at Mallard's Rest Fishing Access on August 9, 1986, including proof of defendant's conviction of felony theft in such matter. Such evidence will be offered to establish motive, intent, plan and/or absence of mistake or accident with respect to defendant's conduct at issue in these proceedings.

4. Evidence of a theft of a rifle from a pickup truck at Grey Cliff Fishing Access, Sweet Grass County, Montana, in August 1988 and possession thereof by defendant at his place of residence in Roundup, Montana.

4

Such evidence will be offered by the State to establish a common scheme of thefts by the defendant as well as to establish motive and intent.

Respondent then filed an amended information adding a third count (Count III) charging defendant with felony theft in violation of § 45-6-301, MCA, in connection with the rifle theft at Grey Cliff Fishing Access.

Counsel for defendant moved to dismiss the amended information arguing the State "attempt[ed] to combine two or more misdemeanors under the concept of common scheme in order to establish a felony status against . . . defendant" and that the facts contained within the information were insufficient to establish criminal conduct. The District Court denied this motion as well as a second motion to dismiss based on an absence of probable cause. Counsel for defendant filed briefs accompanied by exhibits in support of both motions. The court further denied the State's motion to dismiss Count III of the information.

At trial, defendant testified that on September 1, 1988, he had driven from Roundup to Bozeman seeking work as a firefighter. At Reedpoint, the throttle bracket on defendant's pickup broke and he lost power. Approximately two hours later, around 5:00 p.m., defendant turned back toward Billings. He testified to using his gears to pull his pickup over the hill where Deputy Sheriff Dan Ames eventually arrested him. Defendant denied breaking into Leader's vehicle. The State called Dr. Larry B. Howard of the State crime lab who performed tests comparing the glass found in defendant's pockets and imbedded in his gloves with glass taken

5

Justice Diane G. Barz delivered the Opinion of the Court.

Tommy Johnstone appeals his conviction of felony attempted theft and criminal trespass to vehicles by a jury empaneled in the District Court of the Sixth Judicial District, Sweet Grass County. We affirm.

On September 1, 1988, Carl Leader was fishing at a State access on the Boulder River off Highway 298 near McLeod, south of Big Timber, Montana. Mr. Leader arrived at the access at approximately 3:30 p.m. and fished for roughly one and one-half hours. Leader locked a pistol, fishing gear and a jacket inside his truck. There was no one else present at the access when Mr. Leader arrived and he saw only one other vehicle during this time. Mr. Leader did not have a clear view of the parking area at all times. Shortly before leaving, Mr. Leader heard another vehicle in the parking area. He proceeded up a bank and saw an older model Ford pickup bearing 23 license plates. Mr. Leader on that day described the vehicle as green but at trial stated it was bluish-green. The occupant of the vehicle smiled and waved at Mr. Leader before driving away. Leader at trial identified defendant as the occupant of the truck. Upon entering his vehicle, Leader discovered the driver's side ventilator window was broken and the main window was rolled down, however nothing was missing from the truck. Leader drove the fourteen and one-half miles into Big Timber to report the incident, arriving around 6:00 p.m.

George Ames, Sweet Grass County Undersheriff, observed a turquoise Ford pickup bearing 23-county license plates proceeding

from the broken window on Leader's vehicle. Howard testified all the glass had the same refractive index and that the pant pocket glass and the glass from the window had similar densities while that from the shirt pockets had a higher density. Howard testified the probability was high that the glass samples originated from the same source. Howard further opined that the highly fragmented glass resulted from a blow from a heavy instrument as contrasted with "diced" glass which would result from an accident.

Defendant explained the glass found on his clothing by describing his practice of rummaging through dumpsters sniffing out valuable refuse. These activities took place in addition to defendant's customary employment as a logger. Defendant stated that although he had not worn the clothes in which he was arrested on a dumpster-foraging expedition since last laundering them, he expected the glass was heavy enough to remain in the pockets during washing and require manual removal.

The State offered no evidence of Count III of the information and the District Court dismissed this charge upon defendant's motion. The jury returned a guilty verdict on the remaining counts. The District Court sentenced defendant to six years in the Montana State Prison on the attempted theft charge and six months on the criminal trespass to vehicles charge. These sentences were to be served concurrently, but consecutively with defendant's prior sentences for which he was on parole at the time of this offense. Defendant was further designated a persistent felony nondangerous offender.

6

Defendant raises the following issues on appeal:

1. Did the State prove beyond a reasonable doubt, facts from which defendant's mental state could be inferred?

2. Did the District Court erroneously permit testimony regarding other items contained within Leader's vehicle?

3. Did the District Court properly admit evidence of defendant's other crimes?

4. Did the jury have sufficient evidence upon which to convict defendant of criminal trespass to vehicles?

5. Was defendant convicted of both attempted theft and criminal trespass to vehicles in violation of § 46-11-502, MCA?

6. Did defendant receive effective assistance of counsel?

I.

Defendant was charged with attempted theft because he "enter[ed] [Leader's] vehicle attempting to remove a pistol from the front seat of the vehicle . . . " Defendant argues that because the pistol was concealed by Leader's jacket, he could not have formulated the requisite mental state for attempted theft. Defendant appears to argue the State must prove beyond a reasonable doubt that he specifically intended to steal Leader's pistol. This would be impossible to prove because, as Leader testified, the pistol was covered and defendant could not see it.

Section 45-4-103(1), MCA, provides that:

A person commits the offense of attempt when, <u>with the purpose to commit a specific offense</u>, he does any act toward the commission of such offense. (Emphasis added.)

7

The requisite mental state for theft is set forth at § 45-6-301(1), MCA:

> A person commits the offense of theft when he <u>purposely or knowingly</u> obtains or exerts unauthorized control over property of the owner and:
>
> (a) has the <u>purpose</u> of depriving the owner of the property;
>
> (b) <u>purposely or knowingly</u> uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or
>
> (c) uses, conceals, or abandons the property <u>knowing</u> such use, concealment, or abandonment probably will deprive the owner of the property. (Emphasis added.)

Knowingly and purposely are both defined by statute:

> [A] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence.

Section 45-2-101(33), MCA.

> [A] person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result. When a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense.

Section 45-2-101(58), MCA.

Section 45-2-103(3), MCA, permits "[t]he existence of a mental state [to] . . . be inferred from the acts of the accused and the facts and circumstances connected with the offense." What the

8

State must prove beyond a reasonable doubt are facts and circumstances in addition to acts of the defendant from which the jury may infer defendant's mental state. In criminal prosecutions, a verbal or written statement by the defendant regarding his or her mental state is very rare. Furthermore, rarely does a thief know precisely what item or items he will take when he has not had the opportunity to see them all. An examination of the evidence in this case established a sufficient basis for the jury to conclude that the defendant would have exerted unauthorized control over any or all the property in the pickup whether he could see it or not had he not been interrupted.

The jury received instructions on the statutory definition of attempt, theft, purposely and knowingly in addition to the following instructions:

### INSTRUCTION NO. 10

The difference between theft, a felony, and theft, a misdemeanor, is that in order for theft to amount to a felony, the value of the property subject to the theft exceeds $300.00. If the value of the subject property is $300.00 or less, then a theft can only be a misdemeanor.

### INSTRUCTION NO. 12

To convict the defendant of the offense of attempt, the State must prove the following elements:
**FIRST:** That the defendant performed an act which constituted a material step toward the commission of the offense of theft; and
**SECOND:** That the defendant did so with the purpose to commit the offense of theft.
If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
If, on the other hand, you find from your

9

consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

## INSTRUCTION NO. 13

The attempted theft charge against the defendant is a felony charge, and all twelve of your number must agree in order to return either a verdict of guilty or not guilty.

To do so, it is necessary that you consider the crime of attempted theft, a felony, first and that all twelve of you find the defendant either guilty or not guilty of that charge.

In the event you find the defendant guilty of attempted theft, a felony, you need go no further as you will have reached a verdict on that count.

In the event you find the defendant not guilty of attempted theft, a felony, you must then consider the lesser included offense of attempted theft, a misdemeanor. You must then find the defendant guilty or not guilty of this charge. When you have done so you have reached a verdict.

The jury will bear in mind that the burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of any lesser offense which is necessarily included in the crime charged in the information.

## INSTRUCTION NO. 14

You are instructed that the defendant may not be convicted of a felony unless you are satisfied from the evidence that the property alleged to be the subject of the attempted theft exceeds the sum of $300.00 in value.

## INSTRUCTION NO. 15

You are instructed that in the event that you find the defendant guilty of an attempted theft, but the value of the item made the subject of the attempted theft is less than $300.00, then the defendant can only be found guilty of misdemeanor attempted theft.

Carl Leader testified that he locked several items of fishing gear and a pistol concealed by his jacket in his truck before he started fishing. When he left the vehicle, all windows were rolled up and intact. Leader neither saw nor heard a vehicle other than

10

that identified as the defendant's. Leader observed the occupant of the vehicle whom he later identified as the defendant. Upon returning to his vehicle, Leader found the ventilator window broken and the driver's side window rolled down. Although he testified no items were taken, there is no testimony on how he found those items when he returned to his truck. He was never questioned on whether or not the pistol was still covered by the jacket.

Defendant testified that he sat on Interstate 90 for two hours with a broken throttle bracket before turning around to return to Billings. He denied being at the McLeod fishing site at all which is located on the Boulder River roughly sixteen miles south of Big Timber and Interstate 90. This was his testimony after he had already heard Leader identify him as the person at the fishing access, heard that the pistol was covered with a jacket, and heard the undersheriff's testimony that he saw him on the Boulder River road that same afternoon, too.

Where the evidence, viewed in a light most favorable to the State, permits a rational trier of fact to find the essential elements of a crime, we will not reverse the defendant's conviction. Given the evidence and instructions presented to the jury, it could reasonably conclude beyond a reasonable doubt defendant had the requisite mental state for conviction of felony attempted theft.

II.

Defendant also asserts the District Court improperly admitted

11

testimony regarding other items visible in Leader's vehicle when defendant broke the window. Defendant seems to argue that the prosecution surprised him by referring to these other articles defendant may have been attempting to steal. The information need not have referred to any particular item contained within Leader's vehicle to properly set forth a charge of attempted theft.

> It shall not be a defense to a charge of attempt that because of a misapprehension of the circumstances it would have been impossible for the accused to commit the offense attempted.

Section 45-4-103(2), MCA. The original information and the amended information gave defendant and his attorney notice about the "other property" in addition to the pistol in Leader's vehicle.

> On the afternoon of September 1, 1988, the defendant, TOMMY JOHNSTONE, did knowingly or purposely and without authority break the driver's side vent window of a pickup truck belonging to Carl Leader and did enter the vehicle attempting to remove a pistol from the front seat of the vehicle, all within the County of Sweet Grass, State of Montana. The value of the pistol, together with the value of other property taken in what authorities believe is a common scheme of theft of property from vehicles parked at recreation sites, exceeds $300.

Furthermore, prior to trial while arguing his motion in limine regarding evidence of other crimes, defense counsel stated to the court: "And then we are going to be into the question of valuation about the items alleged to be the object of the attempted theft I suppose . . . " Finally, the defendant had an expert who offered evidence of the value of the pistol and the holster.

The testimony of Mr. Leader was that he left a spinning rod, a basket of fishing tackle, his jacket and the pistol which was in

12

a holster in his vehicle when he went to go fishing. Only the pistol and holster were admitted as an exhibit in evidence. There was no objection to this testimony or the exhibit during trial. Furthermore, the policy behind the statutory requirements of the information is to afford a defendant due process of law; and not to restrict the prosecution's strategy in presenting its case once the defendant is fully apprised of the charges against him. See, State v. Sanderson (1985), 214 Mont. 437, 453-54, 692 P.2d 479, 488.

Defendant did not object to this testimony at trial. Although we have the discretion to consider on appeal matters not raised before the District Court in the interests of justice, because we determine defendant received effective assistance of counsel, we decline to do so here.

III.

As we noted above, defendant's mental state could be inferred from his acts, and the surrounding circumstances. A critical factor was defendant's motivation or lack thereof. Although evidence of other crimes is inadmissible to show a criminal defendant behaved consistently with past criminal conduct "[i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b), M.R.Evid. Evidence of defendant's past crimes was probative of his mental state,

13

intent and preparation.

Other crimes evidence is admissible only when the State satisfies the four factor test set forth in State v. Just (1979), 184 Mont. 262, 269, 602 P.2d 957, 961:

1. Similarity of crimes or acts;

2. nearness in time; and

3. tendency to establish a common scheme, plan or system; and

4. the probative value of the evidence is not substantially outweighed by the prejudice to the defendant. (Emphasis in original.)

Defendant's crimes meet the Just similarity requirement. Each involved a vehicle parked at a remote recreation access site. In each case, either the driver's side window or wing window were broken to afford access to the vehicle. In each case, the perpetrator took small, easily transported items. None of the vehicles were stolen. Each theft was a felony. Defendant's past crimes are substantially similar to those for which he was charged in this action and thus satisfy the first of the Just factors. We further find that the similarity of defendant's methods satisfy the third Just factor: a common plan, scheme or system.

The District Court in its discretion may find adequate proximity in time between the crimes charged and those for which conviction is sought by considering the number of incidents and the nearness in time of the last prior crime. State v. Hansen (1980), 187 Mont. 91, 98, 608 P.2d 1083, 1087. Defendant was convicted of his previous crimes in September and October of 1986. The incident at issue here took place on September 1, 1988. Defendant's crimes

14

were interrupted only by his incarceration at Montana State Prison. This Court has previously held that crimes taking place three years earlier were not too remote in time under this rule. State v. Heine (1975), 169 Mont. 25, 28, 544 P.2d 1212, 1214. Defendant's prior crimes were sufficiently close in time to satisfy the second Just test.

Lastly, the probative value of the other crimes evidence must outweigh its prejudicial nature. This Court recognizes that evidence of other crimes is unquestionably prejudicial. In Just, we set forth precautionary steps which minimize the prejudice to the defendant:

> (a) Evidence of other crimes may not be received unless there has been notice to the defendant that such evidence is to be introduced. The procedures set forth in section 46-18-503 MCA should serve as guidelines for the form and content of such notice. Additionally, the notice to the defendant shall include a statement as to the purposes for which such evidence is to be admitted.
>
> (b) At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes.
>
> (c) In its final charge, the court should instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment.

Just, 602 P.2d at 963-64.

In this case, the State notified defendant of its intention to introduce evidence of his prior crimes. Prior to testimony by George Ames regarding defendant's prior crimes, the District Court gave the following instruction:

15

Ladies and Gentlemen of the jury, evidence is about to be introduced for the purpose of showing the defendant committed acts other than the ones for which he is on trial. You may not consider this evidence to prove that the defendant is a person of bad character, or that he has a disposition to commit crimes. You may only consider this evidence for the limited purposes of providing a characteristic method, plan or scheme used in the commission of the offense. You may also consider this evidence to prove existence of a mental state which is an element of the crime charged. You may not consider this evidence for any other purpose that would expose the defendant to unjust double punishment.

The District Court properly admitted evidence of defendant's other crimes.

## IV.

Defendant maintains there was insufficient evidence to sustain his conviction for criminal trespass to vehicles. Section 45-6-202(1), MCA, states:

A person commits the offense of criminal trespass to vehicles when he purposely or knowingly and without authority enters any vehicle or any part thereof.

Mr. Leader testified he left his vehicle locked with the windows intact. Mr. Leader heard a vehicle he identified as the defendant's in the parking area and immediately climbed over the bank to investigate. He saw a man, later identified as the defendant, driving away. Upon returning to his truck, Leader found the ventilator window broken and the driver's side window rolled down. When defendant was arrested, his pants and shirt pockets contained glass. There were slivers of glass imbedded in gloves found in defendant's vehicle as well as pieces of glass discovered on the wrecking bar in the same vehicle. Dr. Howard of the State

16

Crime Lab testified this glass was tempered auto glass, resulted from a blow to the glass rather than an accident and was probably the same glass found in Leader's vehicle.

The jury had sufficient credible evidence upon which to base defendant's conviction of criminal trespass to vehicles. Defendant's assertions otherwise are without merit.

V.

Defendant contends he was improperly convicted of criminal trespass to vehicles and attempted theft in violation of § 46-11-502, MCA. That section provides:

> When the same transaction may establish the commission of more than one offense, a person charged with such conduct may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
> (1) one offense is included in the other;
> (2) one offense consists only of a conspiracy or other form of preparation to commit the other;
> (3) inconsistent findings of fact are required to establish the commission of the offenses;
> (4) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
> (5) the offense is defined to prohibit a continuing course of conduct and the defendant's course of conduct was interrupted, unless the law provides that the specific periods of such conduct constitute separate offenses.

Defendant argues that the trespass to the vehicle was committed merely in preparation for the attempted theft. The United States Supreme Court considered this issue in Blockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, concluding:

17

[T]hat where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. (Citations omitted.)

Section 45-6-202(1), MCA, sets forth the elements of criminal trespass to vehicles:

(1) A person commits the offense of criminal trespass to vehicles when he purposely or knowingly and without authority enters any vehicle or any part thereof.

Section 45-6-301(1), MCA, states that:

A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
(a) has the purpose of depriving the owner of the property;
(b) purposely or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or
(c) uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

Clearly, criminal trespass to vehicles involves unauthorized entry of a vehicle while theft requires unauthorized exertion of control over another's property. These are distinct and separate elements. Defendant's conviction does not violate § 45-11-502, MCA.

VI.

Defendant maintains he received ineffective assistance of counsel evidenced by the following:

1. Failure to object to:

a. statements made by the prosecutor regarding the third count of the amended information;

18

b. introduction of an empty plastic bag which once contained glass taken from defendant's pockets;

c. the prosecutor's opening statement wherein he referred to defendant's prior convictions.

2. Failure to disqualify Judge Robb despite the fact that he presided over defendant's three prior convictions.

3. Failure to move for change of venue.

4. Failure to call expert witnesses to testify regarding the glass taken from defendant's pockets.

5. Failure to call witnesses to testify about the condition of defendant's vehicle.

6. Failure to cross-examine law enforcement officials as to their reasons for not having Carl Leader identify defendant at the Stillwater County jail in Columbus.

In State v. Coates (Mont. 1990), 786 P.2d 1182, 1185, 47 St.Rep. 328, 332, we made the following observation concerning effective assistance of counsel:

> In evaluating ineffective assistance of counsel claims, this Court utilizes a two-part test set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, counsel's performance must be deficient. To assess deficient performance, this Court employs the "'reasonably effective assistance' test of whether a defendant's counsel acted within the range of competence demanded of attorneys in criminal cases. (Citation omitted.)" State v. Elliott (1986), 221 Mont. 174, 178, 717 P.2d 572, 575. Second, counsel's deficient performance must have so prejudiced the defendant as to deprive the defendant of a fair trial. State v. Leavens (1986), 222 Mont. 473, 475, 723 P.2d 236, 237. The standard for evaluating prejudice is whether a reasonable probability exists that but for counsel's deficient performance, the trial's outcome would have been different. Leavens, 723 P.2d at 237. However, in evaluating a defense counsel's performance, this Court

19

will not second guess trial tactics and strategy. State v. LaValley (1983), 203 Mont. 393, 397, 661 P.2d 869, 872.

Allegations 1, 4, 5 and 6 concern trial tactics. We have repeatedly held that we will not second-guess trial tactics on appeal. State v. LaValley (1983), 203 Mont. 393, 397, 661 P.2d 869, 872. Defendant's assertion that counsel failed to move for a change of venue was supported by outside evidence. Introduction of other evidence is proper when seeking a writ for post-conviction relief, not on appeal. State v. Elliott (1986), 221 Mont. 174, 178, 717 P.2d 572, 575. As to defendant's contention that his counsel failed to disqualify Judge Robb, we find no indication in the record that defendant was prejudiced by this fact.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

20

Justice William E. Hunt, Sr., dissenting:

I concur in part and dissent in part and would reverse the conviction. I concur with the majority's conclusions concerning the issues three, four, five and six. I dissent to the majority conclusions on issues one and two.

While I concur with the majority I would like to add the following to their discussion regarding issue three, admissability of other crimes evidence; and issue six, ineffective assistance of counsel.

In the third issue, admissability of other crimes evidence, the majority fails to actually apply the fourth Just factor, the weighing of probative value of the evidence versus its prejudicial effect, to the facts of the case. The majority says that the procedural safeguards were complied with and, by implication, indicates that compliance with these safeguards alleviates any prejudicial effect the other crimes evidence may have on the defendant. This is just not so. Although the procedural safeguards do alleviate some of the prejudice to the defendant, they do not replace the court's ultimate task of weighing the probative value of the other crimes evidence against its prejudicial effect.

Even if the prior crimes evidence fits within the first three Just factors, as it did in this case, thereby "giv[ing] great probative weight to the evidence of prior acts," the final weighing must occur. State v. Eiler, 234 Mont. 38, 51, 762 P.2d 210, 218 (1988). I do agree that, in light of the significant evidence linking defendant with the charge of criminal trespass to a vehicle and the compliance with the procedural factors and the first three Just factors, the probative value exceeds the prejudicial effect of the introduction of the other crimes evidence.

Discussing the sixth issue, ineffective assistance of counsel, the majority concludes that because the alleged errors of counsel were merely trial tactics, it cannot be said that counsel was ineffective. While I agree with the conclusion that counsel was

21

not ineffective, I do so for different reasons than those used by the majority. Our review of defendant's allegations must be confined to the record. "In some cases, however [sic] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged." People v. Pope, 590 P.2d 859 (Cal. 1979). Without an explanation in the record for counsel's actions or "unless there simply could be no satisfactory explanation" it is difficult to objectively decide whether counsel's actions or inactions went beyond tactical decision. People, 590 P.2d at 867. Many of the jurisdictions that have recently found ineffectiveness under the Strickland standards have done so on post-conviction or habeas corpus. See generally Kimmelman v. Morrison, 477 U.S. 365, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986); Sullivan v. Fairman, 819 F.2d 1382 (7th Cir. 1987); and Williams v. State, 515 So.2d 1042 (Fla.Dist.Ct.App. 1987). In each case, an evidentiary hearing was held to explain inconsistencies in the record.

Turning to the first two issues, that of the State proving the requisite mental state for attempt beyond a reasonable doubt and the State's use of other property evidence to support this mental state, I dissent to the conclusions of the majority. The principle of criminal law is that the State has the burden of "establish[ing] the necessary criminal intent beyond a reasonable doubt." State v. Watson, 211 Mont. 401, 415, 686 P.2d 879, 886 (1984); See § 46-16-601, MCA; State v. Kramp, 200 Mont. 383, 651 P.2d 614 (1982); In re Winship, 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068 (1970); U.S.Const. Amend. XIV. Although I agree with the majority that this burden can be met through inference, nonetheless the standard still exists. In its case-in-chief, the State fails to meet this burden in proving that the defendant committed an attempted theft.

The State failed to meet its burden in two ways. First, the State failed to prove that defendant had purposely and knowingly planned to steal an object of which he was not aware. Secondly, the State then used inadmissable evidence of other property visible in the vehicle to support the defendant's mental state.

22

A person cannot commit the offense of attempt if, looking at the facts as they were understood by that person at the time he acted, the crime did not appear possible. People v. Meyer, 215 Cal.Rptr. 352 (1985). See also People v. Leichtweis, 399 N.Y.S.2d 439 (1977); State v. Niehuser, 533 P.2d 834 (Ore.App. 1975). In this case, the information charged defendant with attempt to steal a particular piece of property, namely, the pistol. I agree with the majority's contention that the information need not have referred to any particular item contained within Leader's truck in order to properly set forth a charge of attempted theft, but since it did, the State is under obligation to prove beyond a reasonable doubt that defendant was attempting to steal the pistol.

Defendant "acted" when he broke the ventilator window of Leader's truck. At that time, the pistol was hidden from view by a jacket. Because defendant did not know, at the time he acted, that the pistol existed, it was impossible for defendant to purposely or knowingly plan to steal the pistol.

To overcome this flaw, the State presented evidence during trial of other property, primarily fishing gear, that was visible within the truck. As indicated during the following discussion that occurred between the State and defense counsel during jury instructions, the State had planned, throughout its investigation, to rely on this other property evidence to prove defendant purposely or knowingly planned to steal the pistol. The discussion occurred as follows:

> DEFENSE COUNSEL: You never said anything up until today about including fishing poles and fishing tackle and that kind of stuff in the truck as well.
>
> STATE COUNSEL: I think I told you there was some other stuff there.
>
> DEFENSE COUNSEL: I don't recall that. The only thing we have ever talked about that I ever had in mind was just the gun, which was on the front seat, or whatever.
>
> STATE COUNSEL: But there was other stuff in the car that the jury could find he was likely to take or be inclined

to take. So I think the property, as the generic term, is more apropos.

Defendant was never given notice prior to trial of the existence of this other property evidence. The State's failure to notify defendant of its intent to use this other property evidence at trial made it impossible for defendant to prepare any rebuttal, resulting in severe prejudice to defendant.

At trial, defendant failed to object to the use of this other property evidence. However, this Court has the discretion to consider the use of this evidence in the interests of justice. As stated in our codified version of the plain error doctrine, § 46-20-701(2), MCA, a trial error may be considered on appeal if the introduction of the questioned evidence affected a constitutional right, was prejudicial to the defendant's guilt, and was not known and could not have been ascertained with due diligence by defendant or his attorney. The use of this other property evidence complies with these factors.

When viewing the evidence in a light most favorable to the State, there is insufficient evidence to establish the defendant's requisite mental state beyond a reasonable doubt for attempted theft of a pistol. I would reverse the District Court.

_____
                    Justice

I concur with the foregoing dissent.

_____
                    Justice

24