No.  95-476

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DAVID WAYNE GUNDERSON,

Defendant and Appellant.

APPEAL FROM:      District Court of the First Judicial District,
In and for the County of Broadwater,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender Office, Helena, Montana

For Respondent:

John T. Flynn, Broadwater County Attorney, Townsend, Montana;
Joseph P.Mazuzrek, Attorney General, John Paulson, Assistant
Attorney General,Helena, Montana

Submitted on Briefs: February 27, 1997

Decided: April 8, 1997
Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant David Wayne Gunderson (Gunderson) appeals the judgment of the First
Judicial District Court, Broadwater County, upon a jury verdict finding him guilty of one
count of sexual intercourse without consent.  We affirm.

Gunderson presents three issues on appeal:

1. Did the District Court abuse its discretion in failing to instruct the jury, sua sponte, that sexual assault was a lesser-included offense of sexual intercourse without consent?

2. Did the District Court abuse its discretion in sentencing Gunderson as a persistent felony offender?

3. Did the District Court abuse its discretion in sentencing Gunderson as a dangerous offender?

On the night of September 16, 1994, Jenny E. (Jenny), a seventeen year old girl, was spending time with friends at the apartment of her boyfriend, Pat Long (Pat). While Pat was retrieving some things from his truck, another truck pulled up and the driver engaged him in conversation. The driver of the truck, who introduced himself as "Dave," was a stranger to Pat, Jenny, and their friends. At trial, Pat, Jenny, and other witnesses present that night identified the stranger as Gunderson. Gunderson asked Pat to direct him to a certain campground outside of town.

While Gunderson and Pat were talking, a police car pulled up and the officer briefly engaged Pat in conversation. After the officer left, Gunderson followed Pat into the apartment and asked if one of the girls present would drive his truck to the campground. He explained that he had been drinking and he did not want to get a DUI.

Jenny and Pat agreed to help Gunderson get his truck to the campground. They agreed that Jenny would drive Gunderson's truck, while Pat and Gunderson would follow in Pat's truck and then Pat and Jenny would return to town. The three went outside and Jenny got in the driver's side of Gunderson's truck. Pat returned to the apartment to ask his roommate to come with them. While Pat was gone, Gunderson jumped in his truck, moved Jenny over, and drove off.

Jenny testified at trial that she attempted to direct Gunderson to the campground but that he did not listen to her. Instead of heading for the campground, he drove Jenny out of town in the opposite direction, finally stopping on an isolated road. Jenny testified that Gunderson then made advances towards her, at which time she jumped out of the truck and tried to run. She testified that Gunderson caught her and threw her down in the ditch or borrow pit that paralleled the road. When she attempted to rise, Gunderson threw her back down and told her that if she fought him, he would shoot her and leave her there to die. Gunderson then hit her lightly in the mouth, removed her jeans and panties, and laid down on her. Jenny testified that, while she was uncertain whether he penetrated her with his penis, she was certain that he penetrated her with his fingers.

After about twenty minutes, Gunderson allowed her to rise and dress. She then began to walk back to town, but Gunderson put her in the truck and drove her back. Jenny testified that he told her on the way that she should not attempt to press charges. He told her that if he had to go to jail, he would kill her when he was released. From the location where Gunderson dropped her off, Jenny walked back to Pat's apartment. Her friends had been out looking for her throughout the time she was gone. When she told them what had happened, they took her to the hospital.

After being examined at the hospital, Jenny, her father, and a sheriff's deputy returned to the spot where she had been attacked. The sheriff's deputy found at the scene a pack of cigarettes, a lighter, and a black wallet with a driver's license in it. Jenny identified the individual whose picture was on the license as her attacker; the driver's license belonged to Gunderson. Gunderson subsequently was arrested at his home and charged with one count of kidnaping and one count of sexual intercourse without consent.

At trial, Gunderson admitted to being the individual with Jenny on the night in question. He claimed, however, that they had fallen into the ditch because the truck was parked too close to the edge. Gunderson admitted to making sexual advances, but claimed that he desisted once Jenny had told him twice to stop. He denied penetrating her with his fingers; denied threatening to kill her; and denied striking her. After trial, the jury found him not guilty of kidnaping, but guilty of sexual intercourse without consent. Gunderson appeals his conviction and sentence.

1. Did the District Court abuse its discretion in failing to instruct the jury, sua sponte, that sexual assault was a lesser-included offense of sexual intercourse without

consent?

Gunderson first argues that the District Court erred by not, of its own initiative, instructing the jury that sexual assault is a lesser-included offense of sexual intercourse without consent. Gunderson contends that the failure of the District Court to so instruct the jury deprived him of the possibility that he would be convicted of sexual assault, a misdemeanor, rather that sexual intercourse without consent, a felony. We review alleged errors in jury instructions in criminal cases to ensure the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Patton (1996), 930 P.2d 635, 53 St.Rep. 1402 (citing State v. Brandon (1994), 264 Mont. 231, 237, 870 P.2d 734, 737; State v. Lundblade (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548).

This Court has previously reviewed and rejected the proposition that a trial court should be required to instruct the jury regarding lesser-included offenses even if the defendant does not request such an instruction. See State v. Sheppard (1992), 253 Mont. 118, 832 P.2d 370 (Sheppard I). In Sheppard I, we held:

Montana recognizes that, upon request, a defendant is entitled to an instruction about a lesser-included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater. However, the rule in Montana and the overwhelming majority of states is that if a request for such an instruction is not made, the appellate court will not overturn the conviction absent plain error.

832 P.2d at 373 (emphasis added; citations omitted). In articulating the rationale for this rule, this Court stated that "under our adversarial system of justice, the prosecution and defense must have the option of foregoing a lesser charge instruction for strategic reasons. Lawyers, not judges, should try cases." Sheppard I, 832 P.2d at 373. We also noted that "mandatory sua sponte jury instruction on lesser offenses is inconsistent with Montana law and our public policy of allowing trial counsel to conduct the case according to his or her own strategy . . . ." Sheppard I, 832 P.2d at 373. Our holding in Sheppard I was reviewed and affirmed in State v. Sheppard (1995), 270 Mont. 122, 890 P.2d 754 (Sheppard II) and State v. Leyba (1996), 276 Mont. 45, 915 P.2d 794.

In the case at bar, Gunderson concedes that his counsel did not request an instruction on sexual assault. To the contrary, counsel specifically declined such an instruction when the District Court sua sponte offered it, stating "at this point it is a conscious decision to not ask for an instruction on the lesser included [offense]." Counsel therefore made a calculated decision to forego an instruction on sexual assault, presumably because it was incompatible with his trial strategy. As we have said before "we will not second guess counselþs tactical decisions." Sheppard II, 890 P.2d at 757. Nor will we hold the District Court in error for not forcing counsel to depart from his trial strategy by accepting an instruction he or she purposely declined to give. Accordingly, we conclude that the District Court did not err in failing to sua sponte instruct the jury on sexual assault.

In resolving this issue, we do not address whether sexual assault is, as a matter of law, a lesser included offense of sexual intercourse without consent. Such a determination is not necessary to the resolution of this case and, therefore, is beyond the scope of this appeal.

2. Did the District Court err in sentencing Gunderson as a persistent felony offender?

Gunderson next asserts that the District Court exceeded its authority by sentencing him to twenty years on the charge of sexual intercourse without consent and an additional ten years due to his status as a persistent felony offender. District courts have broad discretion in sentencing criminal defendants. We review criminal sentences only to determine whether the district court abused its discretion in sentencing the defendant. State v. Graveley (1996), 275 Mont. 519, 521, 915 P.2d 184, 186. Our review of a sentence is limited to questions of legality, State v. Graves (1995), 272 Mont. 451, 463, 901 P.2d 549, 557, and a sentence is not illegal when it is within the parameters provided by statute. State v. Henry (1995), 271 Mont. 491, 497-98, 898 P.2d 1195, 1199.

Citing State v. Fitzpatrick (1991), 247 Mont. 206, 805 P.2d 584, Gunderson contends that a sentence as a persistent felony offender replaces the maximum sentence for the underlying offense and cannot be imposed in addition to a separate sentence for

the underlying offense. Gunderson misreads Fitzpatrick. In Fitzpatrick, we held only that a persistent felony offenderþs sentence must fall within the parameters mandated by 46-18-502, MCA, and cannot exceed 100 years, the maximum penalty prescribed by law. Section 46-18-502(1), MCA; see also State v. Ford (1996), 926 P.2d 245, 53 St.Rep. 947. Gundersonþs sentence of thirty years falls well within these statutory parameters, and the District Court did not abuse its discretion in sentencing him.

3. Did the District Court abuse its discretion in sentencing Gunderson as a dangerous offender?

Gunderson lastly argues that the District Court lacked the authority to sentence him as a dangerous offender, because the statute which authorized such a designation ( 46-18-404, MCA (1993)) was repealed prior to his sentencing. In light of the statuteþs repeal and this Courtþs decision in State v. Wilson (1996), 926 P.2d 712, 53 St.Rep. 1034, the State concedes that Gundersonþs designation as a dangerous offender was erroneous. Accordingly, we hereby order stricken from the judgment the dangerous offender designation. In all other respects, the order of the District Court is affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER